UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE LYNN FELTON, | No. 2:15-cv-2315-CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.  BACKGROUND

Plaintiff, born July 8, 1980, applied on January 11, 2012 for DIB, alleging disability beginning December 17, 2010. Administrative Transcript ("AT") 14, 36, 66, 169-72. Plaintiff alleged she was unable to work due to a bulging disc touching her sciatic nerve and a back injury. AT 187. In a decision dated February 28, 2014, the ALJ determined that plaintiff was not

1

disabled.[1]  AT 14-26.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since December 17, 2010, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine post surgeries and trauma events.
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

/////

---

[1]   Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401, *et seq.*   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps, stairs, balance and occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch and crawl.
>
> 6. The claimant is capable of performing past relevant work as a cashier and customer service clerk. The work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2010, through the date of this decision.

AT 16-26.

## II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly determined that plaintiff's spinal impairments did not meet or equal the severity criteria set forth in Listing 1.04A; (2) failed to consider if a closed period of disability was warranted; and (3) improperly assessed the credibility of plaintiff's testimony.

## III.   LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

/////

/////

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.   ANALYSIS

   A. *The ALJ did not err in Finding that Plaintiff's Impairments did not Meet or Equal the Requirements of Listing 1.04A*

First, plaintiff argues that the ALJ erred in finding that plaintiff's spinal impairments did not meet or equal the requirements of Listing 1.04A in 20 CFR Part 404, Subpart P, Appendix 1.

The claimant "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify . . . . For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings . . . . A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are

4

1  medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will
2  look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to
3  the listed criteria.  However, we will not substitute your allegations of pain or other symptoms for
4  a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that
5  of a listed impairment."). Furthermore, "[t]he mere diagnosis of an impairment listed in
6  Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545,
7  1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. Id. at
8  1550.

9  Listing 1.04A provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

17  Here, the ALJ considered whether plaintiff's spinal impairments met or equaled the
18  severity criteria for any of the musculoskeletal or neurological listings in Appendix 1, which
19  includes Listing 1.04A, and determined that the medical evidence in the record shows that they
20  did not. AT 18. Specifically, the ALJ found that "[n]o treating or examining physician has
21  mentioned findings equivalent in severity to the criteria of any in the musculoskeletal or
22  neurological listings, nor does the evidence show medical findings that are the same or equivalent
23  to those of any listed impairment of the Listing of Impairments." Id.
24  Plaintiff argues that the ALJ's determination was in error because the objective medical
25  evidence in the record provides findings consistent with the requirements of Listing 1.04A.
26  Plaintiff admits that the record does not establish that she exhibited all of the requisite Listing
27  1.04A criteria simultaneously for a continuous 12-month period, but argues that she was only
28  required to prove that the impairment itself, a spinal disorder resulting in compromise of the

nerve root, was present for more than 12 months and that the other criteria were met at any point in time during the relevant period. Plaintiff contends that the objective medical evidence in the record establishes such proof. The court disagrees.

As noted above, Listing 1.04A requires evidence of nerve root compression characterized by (1) neuro-anatomic distribution of pain, (2) limitation of spinal motion, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, in the case of lower back impairments, which is the case here, (4) positive straight leg raising tests (both sitting and supine). Here, the evidence provides substantial support for the ALJ's conclusion that plaintiff's spinal impairments did not meet or equal these requirements. As the ALJ noted, none of the treating or examining physicians in the record mention findings equivalent in severity to Listing 1.04A's criteria, and the objective medical evidence in the record fails to support plaintiff's contention that her impairments met or equaled those criteria.

In particular, the medical evidence fails to show that plaintiff suffered from nerve root compression, the spinal impairment on which Listing 1.04A is based, for at least a 12 month period during the relevant period. While MRI results from April 2011 first documented a "focal subligamentous herniation . . . markedly compressing the lateral recess and the takeoff of the right L5 nerve root," plaintiff underwent spinal surgery in June 2011, which resulted in the removal of that herniated disc material. AT 321, 331-36, 338, 368-69. A subsequent MRI in August 2011 showed that a further disc protrusion had occurred, and that a "free fragment" was compressing the L5 nerve root; however, plaintiff immediately underwent a second surgery, which resulted in removal of that fragment, "following which the neural strictures relaxed more easily." AT 321-22, 362. Plaintiff argues that further medical records from 2012, particularly MRI findings from January 2012 and October 2012, show that she continued to suffer from nerve root compression after her second surgery. However, a review of those records belies plaintiff's argument. While the January 2012 MRI results showed a "*probable* impingement on the right L5 nerve root prior to exit," the October 2012 MRI showed that while plaintiff had "mild spinal stenosis at [the L4-5] level with mass effect upon the traversing right L5 nerve root," there were "[n]o acute compression deformities." AT 359-60 (emphasis added), 426-27. In short, plaintiff fails to show

that the evidence in the record demonstrates that plaintiff had spinal nerve root compression for a period of 12 months or greater during the relevant period.

Furthermore, the record provides only sporadic evidence of the existence of Listing 1.04A's other criteria. For instance, the treatment and examination notes from throughout the relevant period generally show that plaintiff had either negative or "mildly positive" straight leg raising results. E.g., AT 277, 305, 353-54, 358. Similarly, plaintiff exhibited largely normal motor examination results, with the only signs of weakness occurring just prior to surgeries, which resulted in immediate improvement in that area, and "some collapsing weakness" during the later portion of the relevant period. E.g., AT 352-58, 442, 447, 455, 469. Indeed, even plaintiff admits in her motion that "the remaining findings of listing 1.04A are not continuously present throughout the record." ECF No. 15 at 12.

Plaintiff argues, however, that she was not required to show that each of the criteria had been met simultaneously, or even in close proximity to one another. Plaintiff bases this argument on the Fourth Circuit Court of Appeals' ruling in Radford v. Colvin; that court held that Listing 1.04A does not require a claimant to show that all the symptoms required to meet or equal its criteria are "present simultaneously in the claimant or in close proximity to one another." 734 F.3d 288, 294 (4th Cir. 2013). However, the Fourth Circuit further held in Radford that Listing 1.04A requires a claimant to also show that he or she "has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." Id. Here, plaintiff fails to meet her burden in pointing to evidence in the record that reasonably supports her contention that her nerve root compression lasted for a period of 12 months or greater. Accordingly, the ALJ did not err in concluding that plaintiff's impairments did not meet or equal the criteria set out in Listing 1.04A.[2]

---

[2] The Commissioner argues in her cross-motion for summary judgment that the criteria set forth in Listing 1.04C are more applicable to plaintiff's impairments, but that the evidence in the record still supports the ALJ's determination that plaintiff's impairments do not meet or equal that listing, or any other listing based on musculoskeletal impairments. Plaintiff does not assert that the ALJ erred in not finding her disabled under Listing 1.04C, or any listing other than Listing 1.04A. Accordingly, the court is not required to address the Commissioner's additional argument. See Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Nevertheless, the

B. *The ALJ did not err by not Considering Whether Plaintiff was Entitled to a Closed Period of Disability*

Second, plaintiff argues that the evidence establishes a closed period of disability between December 17, 2010, plaintiff's alleged onset date, and April 19, 2012, the date the first physician to review plaintiff's medical records provided an opinion regarding the functional impact of plaintiff's physical limitations. Plaintiff contends that no physician who opined on plaintiff's limitations assessed specifically whether plaintiff had been disabled prior to April 19, 2012, therefore demonstrating that the ALJ had no basis on which to determine plaintiff was not disabled prior to that date. Plaintiff asserts that while non-examining physician Dr. Tambellini opined on April 19, 2012 that plaintiff was capable of light work as defined in 20 C.F.R. § 404.1567(b), his opinion was only as of that date and contains no analysis or indication that he considered whether plaintiff had been disabled specifically during the period prior to that date. Plaintiff argues further that the opinions of Dr. Eskander and Dr. Uriane, both of whom opined plaintiff had limitations generally consistent with an ability to perform light work, AT 73-75, 442-43, were not based on a review of any medical evidence produced prior to October 2012 and, in the case of Dr. Uraine's opinion, only assessed plaintiff's functional abilities as of January 4, 2013, the date of the examination. Plaintiff contends that the lack of medical opinion evidence addressing plaintiff's limitations during the period between December 17, 2010 and April 19, 2012, and the objective medical evidence from that period mandates that this case be remanded so the ALJ can specifically consider whether plaintiff was disabled during that period. Plaintiff's argument is not well taken for two reasons.

First, plaintiff's contention that the ALJ could not rely on the opinions of Dr. Tambellini and Dr. Uraine with regard to the closed period at issue because they only addressed plaintiff's limitations as of the time they were written is misplaced. Nowhere in either physician's opinion was there a statement that plaintiff's limitations were limited to the date on which the opinions were issued or specifically state that the opinions were only prospective in nature. AT 62-63,

---

Commissioner's argument is well taken as the evidence in the record also does not support a showing that plaintiff's impairments meet or equal the severity requirements of Listing 1.04C.

439-43. While Dr. Tambellini noted that his opinion was a "current assessment," it was also based on a review of plaintiff's medical records developed prior to the date he wrote that opinion. AT 62-63. Accordingly, it was reasonable for the ALJ to take that opinion into account with regard to the entire span of the relevant period, including prior to the date of that opinion. Similarly, it was reasonable for the ALJ to consider Dr. Uraine's opinion with regard to the entire relevant period as that opinion did not specify whether it was only prospective in nature and was based, in part, on a review of records plaintiff had supplied at that time. AT 439-43.

Furthermore, the record fails to support plaintiff's argument that the ALJ could not rely on the medical opinions of Dr. Eskander and Dr. Uraine because they were not based on a review of medical records prior to October 2012. While the earliest evidence Dr. Eskander indicated he had reviewed in forming his opinion was an October 2012 MRI, AT 71-72, and Dr. Uraine noted that he had reviewed only some of the records plaintiff supplied him, AT 439, those facts do not mean the ALJ was precluded from considering those opinions with regard to the entire relevant period, including the period prior to any records they reviewed, to aid in the formation of their opinions. Plaintiff does not contest the ALJ's consideration of the substance of Dr. Tambellini's, Dr. Eskander's, or Dr. Uraine's opinions, and it was reasonable for the ALJ to consider those physicians' opinions with regard to plaintiff's residual functional capacity ("RFC") throughout entire relevant period rather than just the dates on which they provided their respective opinions.

Second, and more importantly, substantial objective medical evidence in the record from the closed period plaintiff asserts should be reconsidered supports the ALJ's determination that plaintiff was not disabled within the meaning of the Act for the duration of that period. On December 27, 2010, plaintiff was diagnosed with muscular sprain/strain due to coughing while ill with a upper respiratory infection. AT 278. Over the course of the next several months, treating notes show that plaintiff exhibited negative straight leg raising and either normal or mildly decreased range of motion in flexion and extension of her back. AT 273-77, 305. Plaintiff's treatment during that time was largely conservative, consisting primarily of pain medications, chiropractic treatment, and physical therapy. Id. In June 2011, after plaintiff underwent her first spinal surgery, plaintiff's examination results showed that plaintiff was "doing well," had no leg

pain, negative straight leg raising, and normal motor examination results. AT 358. While plaintiff's condition subsequently worsened, causing her to undergo a second surgical procedure for her spine on August 13, 2011, the post-surgery examination notes for that second surgery show that plaintiff exhibited negative straight leg raising and had normal motor and sensory examinations. AT 354. During a follow up examination on December 16, 2011, plaintiff exhibited "mildly positive" straight leg raising and stated that her leg pain had returned, but had normal motor and sensory examinations. AT 353. During a subsequent examination on January 31, 2012, plaintiff's straight leg raising results were negative, motor examination was normal, and sensation was intact. AT 352. A January 2012 MRI also revealed "disc herniation probable impingement on the right L5 nerve root suggestive of residual or recurrent disc herniation, with mild degenerative loss of disc space height and signal L4-L5; diffuse annular bulge, L5-Sl with tiny posterior annular fissure centrally." AT 20 (citing AT 390). However, plaintiff declined optional additional surgery at that time. AT 347. This evidence fails to demonstrate that plaintiff had disabling limitations as a result of her spinal impairments for a period of 12 months or greater within the limited time frame plaintiff requests the ALJ be ordered to reconsider. The ALJ carefully and fully addressed this evidence in his decision and reached a reasonable determination that it did not warrant a finding that plaintiff was disabled, not only during the closed period plaintiff now contests, but throughout the entire course of the relevant period.

Moreover, even though plaintiff's condition appeared to decline somewhat subsequent to the closed period, the medical opinion evidence produced during that later period indicates that plaintiff was still largely capable of performing work-related activities commensurate with the regulations' requirements for light work. AT 62-63, 71-72, 439-43. The ALJ assigned those opinions "substantial weight"; a decision plaintiff does not contest. AT 23. Thus, the ALJ's RFC determination that plaintiff was capable of light work with some additional postural limitations throughout the course of the entire relevant period was supported by the substantial evidence.

/////
/////
/////

C. *The ALJ's Credibility Assessment of Plaintiff's Testimony was Proper and Supported by Substantial Evidence*

Finally, plaintiff argues that the ALJ erred in finding plaintiff's testimony regarding the extent of her pain and symptoms less than fully credible.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant non-exertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ assessed plaintiff's testimony as follows:

> This record demonstrates the claimant's allegations are partially supported - she experiences some level of chronic pain necessitating at times, prescription medications, two 2011 surgeries, exacerbation by two rear-ender accidents in 2012 and treatment through a variety of other conservative modalities; there are limited physical exam findings to support her allegations and imagery shows and imagery shows [sic] degenerative changes in addition to recurrent disc herniation. As well, her complaints of pain and limitations to her treating sources support her severe impairments.
>
> However while the record shows she may experience some level of weakness, pain, and fatigue, the weight of the evidence demonstrates her allegations are out of proportion to the medical findings, diagnostic testing and imagery; that her symptoms are so well controlled by the conservative treatment given that she can still perform a wide range of light exertional work; and the medical opinions support her capacity to engage in work activity.

AT 23-24. In short, the ALJ found plaintiff's testimony partially credible insofar as the evidence in the record supports her claims that her spinal impairments cause her some level of weakness, pain, and fatigue, but not to the point of disability that plaintiff alleges. The ALJ's reasons in support of this conclusion, that plaintiff's testimony regarding the degree of her pain and symptoms conflicted with the objective medical findings, diagnostic testing, and imagery, and the fact that plaintiff's symptoms were well controlled with conservative treatment, were proper and supported by substantial evidence from the record.

First, the ALJ cited to the fact that the objective medical evidence and medical opinion evidence in the record did not support plaintiff's claims of disabling limitations and pain. As discussed above the ALJ assigned "substantial weight" to the examining and reviewing opinions of Dr. Tambellini, Dr. Eskander, and Dr. Uraine, all of whom opined limitations in line with an ability to perform light work. AT 23, 62-63, 71-72, 439-43. Such opined limitations conflict with plaintiff's claims of disabling limitations. Plaintiff does not contest the ALJ's assessment of

these three physicians' opinions, or any of the other opinion evidence in the record beyond her erroneous argument that the ALJ was not permitted to consider those opinions with regard to the first part of the alleged disability period.  Similarly, plaintiff's treatment records do not corroborate her claims of disabling pain and symptoms.  As discussed above, plaintiff' treating records through early 2012 demonstrate largely normal-to-mild findings with regard to objective testing.  E.g., AT 273-77, 305, 352-54, 358.

Similarly, the medical records beyond that initial period generally provide findings that conflict with plaintiff's pain and symptom testimony, even though plaintiff had been involved in two automobile accidents that exacerbated her symptoms during that time.  For instance, an October 2012 MRI showed mild spinal stenosis, mass effect upon the traversing right L5 nerve root at L4-L5 with foraminal narrowing, no compression deformities, no significant spinal stenosis at L5-Sl, and undescribed degenerative changes at the sacroiliac joints.  AT 421-22.  A follow up examination of plaintiff on January 23, 2013 indicates that while plaintiff exhibited straight leg raising, she was able to flex and extend, and was "doing well" after she received an epidural steroid.  AT 447.  As the ALJ noted in his decision, there is "no record of care for [plaintiff's spinal] impairment after March 2013." AT 21.  In short, the objective medical evidence does not support plaintiff's claims that she suffered from disabling pain and symptoms for a period of 12 months or more during the relevant period.  Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider.  Burch, 400 F.3d at 681.  Accordingly, the ALJ did not err in providing this reason for discounting plaintiff's testimony in light of the other clear and convincing reasons he provided.

Specifically, the ALJ also properly determined that plaintiff's relatively conservative treatment was a proper consideration.  See Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  Furthermore, it was proper for

the ALJ to consider plaintiff's positive reaction to that treatment. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

Here, the evidence shows that during the earlier portion of the relevant period, plaintiff received relatively conservative treatment in the form of pain medications, physical therapy, and chiropractic care. AT 273-77, 305. While plaintiff did undergo two surgical procedures on her spine in mid-2011, both of which led to some relief in the months after the procedures, and was involved in two car accidents in 2012 that exacerbated some of her symptoms, she later received a series of epidural steroid injections that provided her "very good pain relief." AT 354-55, 358, 465, 469. As the ALJ observed in his decision, the record shows that after receiving the series of epidural steroids and further chiropractic care, plaintiff's "symptoms [were] well controlled and improve[d] such that she [was] able to sustain activities of daily living, liv[ed] with her fiancé, parent[ed] multiple children, under[took] a move to Texas with them all in April 2013, and there resume[d] working part-time." AT 19. In sum, the record contains substantial evidence on which the ALJ could rely to support his reasoning that plaintiff's conservative treatment undermined her claims of disabling pain and symptoms.

Because the ALJ provided multiple proper reasons for discounting plaintiff's testimony that were supported by substantial evidence from the record, the ALJ did not err in his adverse credibility determination.

/////
/////
/////
/////

V.  CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  November 17, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 felton2315.ss